# In the United States Court of Federal Claims

**No. 25-1432C**
**Filed: July 20, 2026**

```
* * * * * * * * * * * * * * * * * * * * *    *
                                             *
BRYAN MORAN,                                 *
                                             *
              Plaintiff,                     *
                                             *
v.                                           *
                                             *
UNITED STATES,                               *
                                             *
              Defendant.                     *
                                             *
* * * * * * * * * * * * * * * * * * * * *    *
                                             *
```

**Bryan Moran**, <u>pro se</u>, Billerica, MA.

**Alexander S. Brewer**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. With him were **Steven Michael Mager**, Assistant Director, Commercial Litigation Branch; **Patricia M. McCarthy,** Director, Commercial Litigation Branch**;** and **Brett A. Shumate**, Assistant Attorney General, Civil Division.

## O P I N I O N

### <u>HORN, J.</u>

### FINDINGS OF FACT

On August 26, 2025, <u>pro se</u> plaintiff Bryan Moran filed a complaint in the United States Court of Federal Claims, alleging unjust conviction and imprisonment and seeking an indefinite amount of compensation in the range of "$250,000.00 to $5,000,000.00,"[1] as well as "REINBURESMENT OF MONEY AND PROPERTY."[2] In his complaint, plaintiff

---

[1] There are inconsistencies in plaintiff's stated relief request. Plaintiff lists "$250,000,00 to $5.5 million Dollars" when stating his relief request in his complaint, but states "$250,000.00 to $5,000,000.00" as his claimed amount on his cover sheet filed with the court. Defendant's motion to dismiss, meanwhile, stated the relief request as "$5,500,000 to $250,000,000 dollars." Moreover, plaintiff's complaint is handwritten, making it sometimes difficult to read particular words and to interpret his punctuation.

[2] Capitalization, grammar, punctuation, abbreviations, spelling, emphasis, and choice of words when quoted in this Opinion are as they originally appear in plaintiff's submissions to this court.

contends "THE GOVERMENT FAILED TO FOLLOW THE STEPS TO LEGALY SEARCH MY BELONGINGS" and "FAILED AND MADE ERRORS ON DENIEING MY MOTIONS." He further contends "money was siezed during incident also." Plaintiff also alleges that his unjust conviction and imprisonment resulted from an "illegal search and seizure" in violation of his Fourth Amendment rights. In his complaint, plaintiff further alleges that at his trial, the United States District Court for the District of Massachusetts denied his motion to suppress evidence, and then denied his motion for reconsideration of the court's denial of the motion to suppress evidence, leading to his conviction in District Court on May 9, 2018. Plaintiff then appealed his conviction to the United States Court of Appeals for the First Circuit based on the denial of his motion for reconsideration, and the First Circuit found that the United States District Court for the District of Massachusetts erred in determining that plaintiff's Fourth Amendment rights had not been violated. The First Circuit reversed the denial of the motion for reconsideration, vacated plaintiff's conviction, and remanded his case back to the United States District Court for the District of Massachusetts on November 27, 2019. On March 19, 2020, the District Court entered an order granting plaintiff's motion to suppress, and the government dismissed the indictment, noting it was "no longer able to proceed with prosecution of the case." United States v. Moran, No. CR 16-10184-IT, at 1 (D. Mass. Apr. 15, 2020).

Approximately five years after being released from prison, plaintiff filed his complaint in the United States Court of Federal Claims, seeking compensation for the 68 months he served in prison, pursuant to 28 U.S.C. § 2513 (2024) and 28 U.S.C. § 1495 (2024), and for his alleged claims of a "violation of my 4th admendment Section 1983 Federal tort claims act." He seeks compensation for "WRONGFUL IMPRISONMENT, PAIN & SUFFERING, PTSD DEPRESSION, ANXIETY, AND TO RETURN & REINBURESMENT OF MONEY AND PROPERTY TAKING IN THIS INCIDENT, LOST WAGES, LOSS OF EMPLOYMENT, LOSS OF FAMILY, HOUSING." Plaintiff attached the District Court's memorandum and order denying his motion for reconsideration and the First Circuit's opinion reversing his conviction to his complaint.

The United States District Court for the District of Massachusetts and the United States Court of Appeals for the First Circuit summarized the facts of plaintiff's case in their decisions, respectively. As explained by the District Court and the First Circuit, on March 21, 2016, plaintiff stored several black garbage bags containing his effects in his sister Alysha Moran's storage unit. See United States v. Moran, No. CR 16-10184-IT, 2017 WL 4435249, at *1-2 (D. Mass. Oct. 5, 2017), recons. denied, No. CR 16-10184-IT, 2018 WL 2122831 (D. Mass. May 8, 2018), rev'd and vacated, 944 F.3d 1 (1st Cir. 2019); see also United States v. Moran, 944 F.3d 1, 3 (1st Cir. 2019). On March 29, 2016,[3] while plaintiff was being held at the Middlesex County Billerica House of Corrections on a separate charge, he learned that Ms. Moran's storage unit needed to be emptied and asked her to move his bags on a recorded phone call. See United States v. Moran, 2017 WL 4435249, at *1; see also United States v. Moran, 944 F.3d at 3. Informed of the call, a detective from the police department for the Town of Wilmington, Massachusetts and officers from the police department for the Town of North Reading, Massachusetts went to Ms. Moran's

---

[3] The District Court's order denying plaintiff's motion to suppress mistakenly lists this date as "March 29, 2017" when the correct year was "2016."

apartment on the same day to investigate plaintiff for drugs. See United States v. Moran, 2017 WL 4435249, at *2; see also United States v. Moran, 944 F.3d at 3. The officers did not obtain a warrant for the search, but they obtained Ms. Moran's consent to conduct a search of her apartment, vehicle, and storage unit through a "consent to search form." See United States v. Moran, 2017 WL 4435249, at *2; see also United States v. Moran, 944 F.3d at 3. The form authorized law enforcement to "take possession of any items found which [were] relevant to the police investigation," and according to the First Circuit opinion, Ms. Moran's signature certified that she was consenting to the search "voluntarily, without threats of [sic] promises of any kind." United States v. Moran, 944 F.3d at 3 (alterations added).

According to the original District Court opinion, after escorting officers to the storage unit, Ms. Moran differentiated the contents of the unit, "stating the black bags belonged to Moran while the boxes containing Christmas decorations belonged to her." United States v. Moran, 2017 WL 4435249, at *2. The District Court had determined that it was unclear whether Ms. Moran gave express consent to search plaintiff's bags. See id. The District Court determined, however, that it was "undisputed that she did not limit her written consent or object to any portion of the search." Id. The District Court also determined that it was undisputed that "Alysha [Moran's sister] volunteered to officers $2,200 in cash located in the pocket of her bathrobe that she said belonged to Moran," and the District Court found "little to no evidence regarding any resistance put forth to a search for, or of, Moran's belongings." Id. (alteration added; emphasis in original). Police then searched plaintiff's bags and discovered fentanyl. See id.

Plaintiff was indicted for possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) (2012). See United States v. Moran, 944 F.3d at 4. Following his indictment, plaintiff filed a motion to suppress the fentanyl as the fruit of an illegal search. Id. The United States District Court for the District of Massachusetts, in its original opinion, denied the motion on the ground that Ms. Moran had actual authority to consent to the search and voluntarily gave such consent. See id. In support of this decision, the District Court determined that plaintiff's instruction for her to move the bags on the March 2016 phone call supported a finding of "'joint access or control'" of the contested property "'for most purposes,'" as did evidence from a November 2015 recorded phone call in which plaintiff and Ms. Moran "explicitly discussed Alysha's need to access property Moran had left with her in order to supply Moran's clients." United States v. Moran, 2017 WL 4435249, at *7 (quoting United States v. Matlock, 415 U.S. 164, 171 n.7 (1974)). The District Court concluded this evidence demonstrated that "Moran had already directed Alysha to take control of the bags without caveat or limitation," that "Alysha alone had access to the bags at that time," and that there was "a pattern and practice of Moran's leaving property with Alysha with anticipation of her not simply safeguarding it, but also accessing it." United States v. Moran, 2017 WL 4435249, at *7.

Plaintiff then filed a motion for reconsideration of the District Court's denial of his motion to suppress, contending that Ms. Moran's consent to search the storage unit could not validly extend to the search of his property within the unit. See United States v. Moran, 2018 WL 2122831, at *1, rev'd and vacated, 944 F.3d 1 (1st Cir. 2019). The District Court denied the motion. Id. at *3. In its reasoning, the District Court declined to reach the issue of whether Ms. Moran had actual authority to consent to the search of plaintiff's bags. See

3

United States v. Moran, 944 F.3d at 4. Instead, the District Court found that Ms. Moran had apparent authority to consent to their search, citing Illinois v. Rodriguez, 497 U.S. 177, 188 (1990) for the court's decision that officers may rely on a third party's consent to search if they reasonably believe the consenting party had actual authority over the property. See United States v. Moran, 2018 WL 2122831, at *3. Thus, the District Court denied the motion for reconsideration, finding that "the officers' knowledge of both the November 2015 and March 2016 conversations, in combination, would have warranted an officer of reasonable caution to infer that Alysha knew that the bags contained illicit contraband, and that Moran expected that Alysha would store, move, and access the bags as necessary." Id. After the District Court's determination, plaintiff pleaded guilty to possession with intent to distribute fentanyl on May 9, 2018, in violation of 21 U.S.C. § 841(a)(1). See United States v. Moran, 944 F.3d at 3. Plaintiff was convicted and sentenced to 120 months in prison.

Following his conviction, plaintiff challenged the denial of his motion for reconsideration by filing an appeal in the United States Court of Appeals for the First Circuit. See United States v. Moran, 944 F.3d at 3. Agreeing with plaintiff that the government had failed to meet its burden to demonstrate that Ms. Moran had either actual or apparent authority to consent to the search, the First Circuit reversed the denial of plaintiff's motion for reconsideration, vacated his conviction, and remanded the case. See id. The First Circuit rejected the theory that Ms. Moran had actual authority to consent to the search, as there was no evidence of "mutual use" of the property, as required by United States v. Matlock. United States v. Moran, 944 F.3d at 5-7 (citing United States v. Matlock, 415 U.S. at 171 n.7).[4] The First Circuit determined that plaintiff's instruction to move the bags and Ms. Moran's access to them in her storage unit did not constitute "mutual use." United States v. Moran, 944 F.3d at 5-6. Further, the First Circuit determined that the November 2015 phone call discussing Ms. Moran's access to plaintiff's possessions was insufficient evidence of access to the bags, as the evidence in question was placed in the storage unit "almost five months later." Id. at 6-7. The First Circuit also rejected the theory that Ms. Moran had apparent authority to consent to the search of plaintiff's bags, finding that the "law enforcement authorities' belief that Alysha had

---

[4] In the Moran decision, the First Circuit explained:

> A third party may consent to search another's effects if the third party "possesse[s] common authority over . . . [the] effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). "Common authority rests 'on mutual use of the property by persons generally having joint access or control for most purposes.'" Meada, 408 F.3d at 21 (quoting Matlock, 415 U.S. at 171 n.7, 94 S. Ct. 988). Such "mutual use" makes it "reasonable to recognize that [the third party] has the right to permit the inspection in [her] own right and that the other[ ] [party has] assumed the risk" that the third party will grant that permission. Matlock, 415 U.S. at 171 n.7, 94 S. Ct. 988.

United States v. Moran, 944 F.3d at 5 (omission and alterations in original).

authority to consent was not objectively reasonable." Id. at 7. Pointing to the evidence that Ms. Moran told the officers which bags belonged to plaintiff, the First Circuit disagreed with the District Court about the showing of apparent authority "given that the putatively consenting party claimed that the closed containers belonged to someone else and the degree of uncertainty that existed about whether she nonetheless enjoyed the kind of mutual use of them that would give her actual authority to consent to their search." Id. at 8. The First Circuit reversed the District Court's denial of plaintiff's motion for reconsideration, vacated his conviction, and remanded the case to the District Court on November 27, 2019. See id. at 9. On March 19, 2020, the District Court entered an order granting plaintiff's motion to suppress, and the government dismissed its indictment, noting it was "no longer able to proceed with prosecution of the case." United States v. Moran, No. CR 16-10184-IT, at 1 (D. Mass. Apr. 15, 2020). Plaintiff was released from custody on March 16, 2020, after serving 68 months of his 120-month District Court sentence. As indicated above, plaintiff then filed his complaint in this court seeking compensation for his time served pursuant to 28 U.S.C. § 2513 and 28 U.S.C. § 1495, among other claims.

In response to plaintiff's complaint, defendant filed a motion to dismiss on January 7, 2026, for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) (2025) of the Rules of the United States Court of Federal Claims (RCFC). In its motion, defendant first asked the court to dismiss plaintiff's claims pursuant to 28 U.S.C. § 2513 and 28 U.S.C. § 1495 for lack of jurisdiction, as plaintiff had not alleged that he had obtained a certificate of innocence, and no such certificate was attached to his complaint. Defendant argued that such a certificate of innocence is a jurisdictional prerequisite in this court. Defendant also argued that there was insufficient evidence of innocence based on the record, including the District Court's dismissal and First Circuit's opinion, which lacked sufficient discussion of the requirements of 28 U.S.C. § 2513 to constitute a certificate of innocence. Although defendant primarily argued that the lack of certificate of innocence demonstrated a lack of subject matter jurisdiction, defendant also argued that, in the alternative, plaintiff failed to state a claim on which relief can be granted under 28 U.S.C. § 2513 and 28 U.S.C. § 1495. Defendant requested the court dismiss any claims arising from plaintiff's allegations regarding violations of the Fourth Amendment and the Federal Tort Claims Act, and although not raised by plaintiff in his complaint, defendant anticipated and refuted a jurisdictional argument based on a possibly alleged Fifth Amendment Takings Clause. Defendant argued that the Fourth Amendment and the Federal Tort Claims Act do not constitute money-mandating provisions under the Tucker Act, and that property seized during a criminal investigation is "'not seized for "public use" within the meaning of the Fifth Amendment.'" (quoting Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1332 (Fed. Cir. 2006)).

Plaintiff's response to defendant's motion to dismiss stated in pertinent part: "A CERTIFICATE OF INNOCENCE IS NOT AN ELEMENT OF A PRIMA FACIE CASE OF UNJUST CONVICTION AND IMPRISONMENT, IT IS MERELY A MEANS OF PROVING THE UNDERLYING FACTS." Plaintiff cited 28 U.S.C. § 2513(a) and an unreported case, Bolduc v. United States, 72 Fed. Cl. 187 (2006), aff'd, 248 F. App'x 162 (Fed. Cir. 2007), to support his assertion. Alternatively, plaintiff argues: "GIVEN THE FACTS OF THE CASE, THAT MORAN DID INDEED PRESENT AND ALLEGE THAT HIS CASE WAS

5

VACCATED AND REMANDED BACK TO DISTRICT COURT. THEREFORE, THE DISTRICT'S ORDER FUNCTIONS AS A ACTIONABLE CERTIFICATE OF INNOCENCE THAT WOULD GIVE RISE TO DAMAGES."

Additionally, in plaintiff's response to the motion to dismiss, plaintiff also suggested, without further elaboration, that he had a claim based on 42 U.S.C. § 1983 (2024) and a claim based on an implied in fact contract. Regarding 42 U.S.C. § 1983, plaintiff asserted:

IN ORDER TO RECOVER DAMAGES FOR ALLEGEDLY UNCONSTITUTIONAL CONVICTION OR SENTENCE INVALID, A 42 U.S.C.S §1983 PLAINTIFF MUST PROVE THAT THE CONVICTION OR SENTENCED HAS BEEN REVERSED ON DIRECT APPEAL, EXPUNGED BY EXECUTIVE ORDER, DECLEARED INVALID BY A STATE TRIBUNAL AUTHORIZED TO MAKE SUCH DETERMINATIONS, OR CALLED INTO QUESTION BY A FEDERAL COURTS ISSUANCE OF A WRIT OF HABEAS CORPUS, 28 U.S.C.S. § 2254.

Regarding plaintiff's implied in fact contract claims, raised for the first time in plaintiff's response to the motion to dismiss, plaintiff stated in full:

MORAN EXPRESSING AND IMPLIED IN FACT CONTRACT, WITH THE UNITED STATES, INDEED IT IS PRACTICALLY HORNBOOK LAW THAT TO PREVAIL ON A BREACH OF CONTRACT, A PLAINTIFF MUST DEMONSTRATE, THE EXISTANCE OF A BINDING AGREEMENT. "THE REQUIRMENTS FOR A CONTRACT BETWEEN THE UNITED STATES AND A PRIVATE PARTY ARE (1) MUTUALITY OF INTENT TO CONTRACT (2) CONSIDERATION (3) LACK OF AMBIGUITY IN OFFER AND ACCEPTANCE AND (4) AUTHORITY ON THE PART OF THE GOVERMENT AGENT ENTERING THE CONTRACT.

In defendant's reply brief in support of its motion to dismiss, moreover, defendant stated that a "reversal of a conviction is not enough to satisfy the requirements of 28 U.S.C. § 2513," and "an actual certificate of innocence is required." Defendant reiterated that the District Court and First Circuit opinions are insufficient evidence of plaintiff's innocence, especially as neither "discussed the requirements of 28 U.S.C. § 2513," nor asserted that "Mr. Moran was not guilty of the offense for which he was convicted or that he did not commit any of the acts charged."

Plaintiff subsequently filed a motion to amend his complaint in this court on March 2, 2026. In this motion, plaintiff listed three points: "1. WRONGFUL CONVICTION AND IMPRISONMENT," "2. DAMAGES DUE TO UNJUST CONVICTION AND IMPRISONMENT," and "3. INVASION OF PRIVACY." Besides citing 28 U.S.C. § 2513 and 28 U.S.C. § 1495, plaintiff provided no further elaboration on these issues. In a March 16, 2026 response, defendant contended that plaintiff's motion to amend would be futile. Plaintiff moved for two enlargements of time to respond on March 23, 2026 and April 20, 2026, indicating that he had requested a certificate of innocence from the United States District Court for the District of Massachusetts, and was awaiting their response. Both enlargements were granted by this court, with instructions to plaintiff to include a copy of

6

the certificate of innocence from the United States District Court for the District of Massachusetts with his reply brief by June 1, 2026.

On April 27, 2026, however, the United States District Court for the District of Massachusetts denied plaintiff's motion for him to receive a certificate of innocence. See United States v. Moran, No. CR 16-10184-IT, at 3 (D. Mass. Apr. 27, 2026). In the District Court's denial, the court wrote:

> The First Circuit, however, did not find Moran "not guilty" of the offenses of conviction. Instead, it reversed this court's denial of Moran's motion to suppress based on an unconstitutional search, vacated his conviction, and remanded for further proceedings. United States v. Moran, 944 F.3d 1, 9 (1st Cir. 2019). On remand, after the court suppressed the challenged evidence, Moran was not tried and acquitted of the charges. Instead, the government sought dismissal where it "is no longer able to proceed with prosecution of the case." Dismissal of Indictments [Doc. No. 237]. Accordingly, while the government conceded that it could not establish Moran's guilt beyond a reasonable doubt without the suppressed evidence, where there was no trial creating any evidentiary record here and Moran has offered no further evidence in connection with his motion, Moran has not met his burden to show that "[h]e did not commit any of the acts charged." 28 U.S.C. § 2513(a)(2).

> The court notes further that to the extent that Moran is seeking a certificate under 28 U.S.C. § 2513(b), he has made no showing that "he did not by misconduct or neglect cause or bring about his own prosecution." 28 U.S.C. § 2513(a)(2).

United States v. Moran, No. CR 16-10184-IT, at 2-3 (D. Mass. Apr. 27, 2026) (alteration in original).

On June 15, 2026, plaintiff submitted a document to the Clerk's Office of the United States Court of Federal Claims, titled "PLAINTIFF'S REPLY TO AMEND COMPLAINT AND RESPONSE TO DEFENDANTS MOTION TO DISMISS."[5] Although plaintiff failed to provide a copy of a certificate of innocence from the United States District Court for the District of Massachusetts, as instructed by the court, plaintiff noted that he "FILED A MOTION TO THE DISTRICT COURT TO RECIEVE A CERTIFICATE OF INNOCENCE BUT STILL HASNT RECIEVED ANYTHING IN RESPONCE" and reiterated that "A CERTIFICATE OF INNOCENCE IS NOT AN ELEMENT OF A PRIMA FACIE OF UNJUST CONVICTION AND IMPRISONMENT. IT IS MERELY A MEANS OF PROVING THE

---

[5] The court notes that the Clerk's Office did not file plaintiff's June 15, 2026 submission because there is no provision in the Rules of the United States Court of Federal Claims for plaintiff's combined submission. Additionally, as reflected above, plaintiff already submitted his response to defendant's motion to dismiss on February 13, 2026. Furthermore, plaintiff's reply brief in support of his motion to amend his complaint was untimely, as it was due by June 1, 2026. Despite the foregoing, to address the submission in this Opinion, the court instructs the Clerk's Office to file plaintiff's June 15, 2026 submission on the docket.

UNDERLYING FACTS." Further, plaintiff asserted that "PLAINTIFF DID SO ALLEGE AND HAS COMPLIED WITH THE REQUIREMENTS OF 28 U.S.C. 2513." Referencing the First Circuit's opinion reversing his conviction, plaintiff noted that "PLAINTIFF HAS PROVIDED A DOCUMENT THAT PURPORTS TO BE A CERTIFICATE OF INNOCENCE IT CONTAINS THE NECESSARY RECITALS OF 28 U.S.C. 2513." Plaintiff also referenced Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) for the holding that the United States Court of Federal Claims has subject matter jurisdiction over a claim when the claim rests on a money-mandating source of law, arguing that 28 U.S.C. § 1495 meets this requirement. Accordingly, plaintiff asserted that he "HAS STATED A CLAIM AND HAS GIVEN SUBJECT MATTER FOR JURISDICTION IN THIS CLAIM." Plaintiff then concluded: "WE RESPECTFULLY REQUEST THAT THE COURT DENY THE GOVERMENTS MOTION TO DISMISS, ALLOW PLAINTIFF THE ABILITY TO AMEND HIS COMPLAINT AND ALLOW THIS CASE TO MOVE FORWARD AS NORMAL. IF NOT CAN WE BE ALLOWED TO WAIT FOR THE DISTRICTS COURTS DECISION CONCERNING THE CERTIFICATE OF INNOCENCE."

## DISCUSSION

The court recognizes that plaintiff in the above captioned case is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 575 U.S. 985 (2015). However, "[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his pleading." Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Doiban v. United States, 173 Fed. Cl. 527, 537 (2024); Ali-Bey v. United States, 169 Fed. Cl. 729, 733 (2024); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (internal citation omitted) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of . . . jurisdictional requirement[s] and set a different rule for pro se litigants only." (omission and alterations added)); Doiban v. United States, 173 Fed. Cl. at 537; Hartman v. United States, 150 Fed. Cl. 794, 796 (2020); Schallmo v. United States, 147 Fed. Cl. 361, 363 (2020); Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have

been met." (alteration added) (citing <u>Bernard v. United States</u>, 59 Fed. Cl. 497, 499, <u>aff'd</u>, 98 F. App'x 860 (Fed. Cir. 2004))); <u>Golden v. United States</u>, 129 Fed. Cl. 630, 637 (2016); <u>Shelkofsky v. United States</u>, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a <u>pro</u> <u>se</u> plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (first alteration added) (quoting <u>Henke v. United States</u>, 60 F.3d 795, 799 (Fed. Cir. 1995))); <u>Harris v. United States</u>, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting <u>Minehan v. United States</u>, 75 Fed. Cl. at 253)).

The court notes that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006) (quoting <u>United States v. Cotton</u>, 535 U.S. 625, 630 (2002)). "Subject-matter jurisdiction may be challenged at any time by the parties or by the court <u>sua</u> <u>sponte</u>." <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing <u>Fanning, Phillips, Molnar v. West</u>, 160 F.3d 717, 720 (Fed. Cir. 1998)), <u>reh'g</u> <u>and</u> <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2004), <u>cert.</u> <u>denied</u>, 545 U.S. 1127 (2005)); <u>see</u> <u>also</u> <u>St. Bernard Parish Gov't v. United States</u>, 916 F.3d 987, 992–93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even <u>sua</u> <u>sponte</u>, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (alteration added) (citing <u>Foster v. Chatman</u>, 578 U.S. 488, 495 (2016))); <u>Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.</u>, 476 F.3d 1329, 1330 (Fed. Cir. 2007); <u>Santini v. United States</u>, 173 Fed. Cl. 724, 726 (2024); <u>Haddad v. United States</u>, 152 Fed. Cl. 1, 16 (2021); <u>Fanelli v. United States</u>, 146 Fed. Cl. 462, 466 (2020).

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941) (citations omitted); <u>see</u> <u>also</u> <u>Wolffing v. United States</u>, 144 Fed. Cl. 626, 636 (2019) ("The waiver of [sovereign] immunity 'may not be inferred, but must be unequivocally expressed.'" (alteration added) (quoting <u>United States v. White Mountain Apache Tribe</u>, 537 U.S. 465, 472 (2003))).

The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2024). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. <u>See</u> <u>United States v. Navajo Nation</u>, 556 U.S. 287,

289–90 (2009); see also Me. Cmty. Health Options v. United States, 590 U.S. 296, 322 (2020); United States v. Mitchell, 463 U.S. 206, 216 (1983); Sanford Health Plan v. United States, 969 F.3d 1370, 1378 (Fed. Cir. 2020); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); McCrory v. United States, 174 Fed. Cl. 311, 313 (2024); Gulley v. United States, 150 Fed. Cl. 405, 411 (2020); Kuntz v. United States, 141 Fed. Cl. 713, 717 (2019). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216 (omission added); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must look beyond the Tucker Act to identify a substantive source of law that creates the right to recovery of money damages against the United States." (alteration added)); Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008); Olson v. United States, 152 Fed. Cl. 33, 40–41 (2021); Jackson v. United States, 143 Fed. Cl. at 245.

In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is proper in the United States Court of Federal Claims, stating:

> The underlying monetary claims are of three types . . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007–08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S. [Corp. v. United States], 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v.] Testan, 424 U.S. [392,] 401–02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal

10

Government for the damage sustained.'" (quoting Eastport S.S. [Corp. v. United States], 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (alterations added; fourth omission in original); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Cotter Corp., N.S.L. v. United States, 127 F.4th 1353, 1366 (Fed. Cir. 2025); Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009); Medrano v. United States, 159 Fed. Cl. 537, 542, supplemented, 161 Fed. Cl. 207 (2022); Szuggar v. United States, 145 Fed. Cl. 331, 335 (2019). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is] simply [a] jurisdictional provision[ ] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)." (alterations added; citations omitted)); see also Me. Cmty. Health Options v. United States, 590 U.S. at 322. "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d at 1308 (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Olson v. United States, 152 Fed. Cl. at 41; Downey v. United States, 147 Fed. Cl. 171, 175 (2020) ("And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States." (citations omitted)); Jackson v. United States, 143 Fed. Cl. at 245 ("If the claim is not based on a 'money-mandating' source of law, then it lies beyond the jurisdiction of this Court." (citing Metz v. United States, 466 F.3d 991, 997 (Fed. Cir. 2006))).

"[T]he determination of jurisdiction is based only on the allegations in the plaintiff's 'well-pleaded complaint[.]'" Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 26 (2025) (alterations added) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9–10 (1983)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. at 9–10), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010).

11

A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2025); Fed. R. Civ. P. 8(a)(1), (2) (2026); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) (alteration added); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S., at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (alteration in Bell Atl. Corp. v. Twombly)).

Plaintiff seeks compensation for unjust conviction and imprisonment by invoking 28 U.S.C. § 1495 and 28 U.S.C. § 2513. According to 28 U.S.C. § 1495, if sufficient facts are alleged in a complaint, the required documents must be provided as proof for the United States Court of Federal Claims to have jurisdiction to render judgment upon a claim for damages by a person unjustly convicted of an offense against the United States and imprisoned. See 28 U.S.C. § 1495. Moreover, 28 U.S.C. § 1495, must be read in conjunction with 28 U.S.C. § 2513. See Humphrey v. United States, 52 Fed. Cl. 593, 596 (2002), aff'd, 60 F. App'x 292 (Fed. Cir. 2003) (citations omitted); see also Sanganza v. United States, 164 Fed. Cl. 188, 194 (2023) (citing Jackson v. United States, 162 Fed. Cl. 282, 296-99 (2022)); Witchard v. United States, 165 Fed. Cl. 125, 133 (2023) ("To be awarded monetary damages, a person suing under Section 1495 must allege and prove certain factual requirements set out in 28 U.S.C. § 2513." (citing Humphrey v. United States, 60 F. App'x 292, 294-95 (Fed. Cir. 2003) and Wood v. United States, 91 Fed. Cl. 569, 571-72 (2009))); Redd v. United States, 147 Fed. Cl. 602, 605 (2020) ("However, a plaintiff bringing suit pursuant to 28 U.S.C. § 1495 must satisfy the requirements of 28 U.S.C. § 2513."); Abu-Shawish v. United States, 120 Fed. Cl. 812, 813 (2015) (indicating that to establish jurisdiction in the United States Court of Federal Claims, a plaintiff seeking compensation under Section 1495 must also meet the requirements of 28 U.S.C. § 2513(a)(1)).

The statute at 28 U.S.C. § 2513 states:

(a) Any person suing under section 1495 of this title must allege and prove that:

(1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty

12

of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

(2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

(b) Proof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received.

(c) No pardon or certified copy of a pardon shall be considered by the United States Court of Federal Claims unless it contains recitals that the pardon was granted after applicant had exhausted all recourse to the courts and that the time for any court to exercise its jurisdiction had expired.

(d) The Court may permit the plaintiff to prosecute such action in forma pauperis.

(e) The amount of damages awarded shall not exceed $100,000 for each 12-month period of incarceration for any plaintiff who was unjustly sentenced to death and $50,000 for each 12-month period of incarceration for any other plaintiff.

28 U.S.C. § 2513 (emphasis in original). Specifically, according to the Judge of the United States Court of Federal Claims in Abu-Shawish v. United States, "in order for this court to have jurisdiction, a plaintiff must obtain a certificate of innocence from the district court which states that not only was he not guilty of the crime of conviction, but also that none of his acts related to the charged crime were other crimes." Abu-Shawish v. United States, 120 Fed. Cl. at 813; see also Carpenter v. United States, 118 Fed. Cl. 712, 713 (2014) ("Jurisdiction conferred by Section 1495 is limited to a plaintiff who proves that 'his conviction has been reversed or set aside on the ground that he is not guilty . . . or that he has been pardoned.'" (omission in original) (quoting 28 U.S.C. § 2513(a)); Taylor v. United States, 168 Fed. Cl. 696, 703 (2023) ("Moreover, this Court lacks subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3) if a plaintiff alleging unjust conviction fails to provide a certificate of innocence as required under 28 U.S.C. § 2513." (citing Jackson v. United States, 162 Fed. Cl. at 296-99)). In Humphrey, this court indicated, "[t]hese jurisdictional requirements [of 28 U.S.C. § 1495 and 28 U.S.C. § 2513] are strictly construed, and a heavy burden is placed upon a claimant seeking relief under such provisions." Humphrey v. United States, 52 Fed. Cl. at 596 (alterations added); see also Miller v. United States, 174 Fed. Cl. 738, 739 (2025) ("Section 2513 requires Mr. Miller to prove, at minimum, that his conviction was reversed or set aside." (citing 28 U.S.C. § 2513(a)(1))); Wood v. United States, 91 Fed. Cl. at 577 (holding that compliance with § 2513, including submission of a certificate of innocence from the federal district court, is

a prerequisite to the jurisdiction of the Court of Federal Claims). Additionally, as noted in Sykes v. United States, 105 Fed. Cl. 231 (2012), "a certificate or pardon must 'either explicitly or by factual recitation' state that the plaintiff has satisfied the requirements of Section 2513." Id. at 233 (quoting Humphrey v. United States, 52 Fed. Cl. at 597).

In the case currently before the court, plaintiff has not satisfied the requirements of 28 U.S.C. § 2513 here. Plaintiff did not provide a certificate of innocence from the District Court. Indeed, plaintiff's motion to receive a certificate of innocence from the United States District Court for the District of Massachusetts was denied on April 27, 2026. See United States v. Moran, No. CR 16-10184-IT, at 3 (D. Mass. Apr. 27, 2026). As indicated above, the District Court determined that "Moran has not met his burden to show that '[h]e did not commit any of the acts charged,'" and "he has made no showing that 'he did not by misconduct or neglect cause or bring about his own prosecution'" as required by 28 U.S.C. § 2513(a)(2). See United States v. Moran, No. CR 16-10184-IT, at 3 (D. Mass. Apr. 27, 2026) (alteration in original) (quoting 28 U.S.C. § 2513(a)(2)). The District Court's analysis is telling, as "[t]his Court has no authority to re-examine in detail the facts surrounding a conviction or imprisonment; such matters are within the sole discretion of the appropriate (usually district) court or executive officer with the authority to reverse, set aside, or pardon a claimant's original conviction." Humphrey v. United States, 52 Fed. Cl. at 596 (alteration added) (citing Rigsbee v. United States, 204 F.2d 70, 73 n.3 (D.C. Cir. 1953)); see also Wood v. United States, 91 Fed. Cl. at 579 ("The text of § 2513 and caselaw reinforce the interpretation that only a federal district court can grant the certificate." (citations omitted)).

Alternatively, plaintiff also alleges "THE DISTRICT'S ORDER FUNCTIONS AS A ACTIONABLE CERTIFICATE OF INNOCENCE THAT WOULD GIVE RISE TO DAMAGES." In plaintiff's case, the United States District Court for the District of Massachusetts denied plaintiff's request to issue a certificate of innocence. While in certain cases "a court's order may arguably constitute a certificate of innocence," "such an order must provide, either explicitly or by factual recitation, that a plaintiff has met the requirements of section 2513," Humphrey v. United States, 52 Fed. Cl. at 597 (citing Andolschek v. United States, 111 Ct. Cl. 567, 574, 77 F. Supp. 950, 951 (1948)), in plaintiff's case that is appropriate, expressively given the District Court's specific denial of plaintiffs request for a certificate of innocence. As quoted above from 28 U.S.C. § 2513 and as explained by a Judge of the United States Court of Federal Claims:

> While the document need not be titled a "certificate of innocence," it must substantively provide: (1) that plaintiff's conviction has been reversed or vacated on the grounds that he was not guilty of the offense for which he was convicted; (2) that plaintiff did not commit any of the acts charged or that his actions or omissions in connection with such charge constituted no offense against the United States, or any state, territory, or the District of Columbia; and (3) that plaintiff did not bring about his own prosecution by neglect or misconduct.

Wood v. United States, 91 Fed. Cl. at 578 (citing § 2513(a); Brunner v. United States, 122 Ct. Cl. 48, 102 F. Supp. 909, 910 (1952), vacated, 124 Ct. Cl. 643, 110 F. Supp. 479 (1953); and Humphrey v. United States, 52 Fed. Cl. at 597). Although the First Circuit's

opinion supports the fact that "plaintiff's conviction has been reversed," reversal of a conviction alone does not suffice to satisfy the requirements of 28 U.S.C. § 2513. See Wood v. United States, 91 Fed. Cl. at 578 ("While the judgment does certify that plaintiff's conviction was reversed, it does not affirm that plaintiff did not commit any of the acts charged or that plaintiff's actions in connection with the charge did not constitute an offense against the United States or any state."); Jackson v. United States, 162 Fed. Cl. at 300–01; Humphrey v. United States, 52 Fed. Cl. at 597 ("[T]he Order neither mentioned section 2513, nor purported to be a certificate of innocence. On its face, the Order is wholly inadequate for the purposes for which it is offered." (alteration added)).

Therefore, the First Circuit's reversal of plaintiff's conviction, the District Court's order granting plaintiff's motion to suppress, and the government's dismissal of the indictment do not suffice, either separately or together, to meet the requirements of 28 U.S.C. § 2513. Plaintiff's submissions do not meet the requirements of 28 U.S.C. § 2513, and although plaintiff's conviction was reversed and the case against him subsequently dismissed, these judgments do not affirm that plaintiff did not commit any of the acts charged, that plaintiff's actions in connection with such charge constituted no offense against the United States, nor that plaintiff did not bring about his own prosecution by neglect or misconduct. See 28 U.S.C. § 2513; see also Wood v. United States, 91 Fed. Cl. at 578. Further, as the United States District Court for the District of Massachusetts found when it denied plaintiff's motion to receive a certificate of innocence, the First Circuit also "did not find Moran 'not guilty' of the offenses of conviction" when it reversed the denial of the motion to suppress based on an unconstitutional search, and the government sought dismissal because it was "'no longer able to proceed with prosecution of the case.'" United States v. Moran, No. CR 16-10184-IT, at 2 (D. Mass. Apr. 27, 2026) (quoting United States v. Moran, No. CR 16-10184-IT, at 1 (D. Mass. Apr. 15, 2020)). Accordingly, the First Circuit's opinion, the District Court's order, and the government's dismissal of the indictment do not constitute a sufficient certificate of innocence to satisfy 28 U.S.C. § 2513 in plaintiff's case.

As described above, in this court, defendant moved to dismiss plaintiff's claims under 28 U.S.C. § 2513 and 28 U.S.C. § 1495 for lack of subject matter jurisdiction under RCFC 12(b)(1), or, in the alternative, for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). As explained by a Judge of the United States Court of Federal Claims in Brewer v. United States:

> "When [sections 1495 and 2513] are read together it becomes manifest that the sections confer jurisdiction on this court only in cases where there has been conviction and in which the other conditions set out in section 2513 are complied with." Grayson v. United States, 141 Ct. Cl. 866, 869 (1958); Moore v. United States, 230 Ct. Cl. 819, 820 (1982) ("A claim [brought pursuant to section 1495] is severely restricted by the requirements of 28 U.S.C. § 2513 (1976) which is jurisdictional and therefore must be strictly construed."); Lucas v. United States, 228 Ct. Cl. 862, 863 (1981); Vincin v. United States, 199 Ct. Cl. 762, 766 (1972).

Brewer v. United States, No. 20-1209, 2021 WL 655432, at *2 (Fed. Cl. Feb. 19, 2021), aff'd, No. 2021-1872, 2023 WL 2233717 (Fed. Cir. Feb. 27, 2023) (alterations in original);

see also Jackson v. United States, 162 Fed. Cl. at 299 ("[T]his Court has subject matter jurisdiction over a 28 U.S.C. § 1495 cause of action only if the plaintiff complies with 28 U.S.C. § 2513, including its requirement of a certificate of innocence." (alteration added)). Moreover, "[s]ubsequent decisions of the Federal Circuit have confirmed the requirements of § 2513 are jurisdictional." Fishbein v. United States, No. 25-874, 2025 WL 2840990, at *6 (Fed. Cl. Oct. 7, 2025) (alteration added). See, e.g., Francis v. United States, No. 2022-1188, 2022 WL 1655689, at *1 (Fed. Cir. Jan. 26, 2022).

"[O]ther judges have applied the Federal Circuit's holding in Fisher [v. United States], 402 F.3d at 1173, to conclude that the Court of Federal Claims has jurisdiction over a complaint alleging an unjust conviction claim regardless of whether the requirements of § 2513 are met because § 1495 is itself a money-mandating statute." Fishbein v. United States, 2025 WL 2840990, at *6 (alterations added). See, e.g., Winters v. United States, 140 Fed. Cl. 585, 588 (2018); Bobka v. United States, 133 Fed. Cl. 405, 410 (2017); Sykes v. United States, 105 Fed. Cl. 231, 234 (2012); see also Fisher v. United States, 402 F.3d at 1173 ("[T]he determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action." (alteration added)). Under these cases, the requirements of section 2513 are instead are considered when determining whether a plaintiff has adequately stated a claim to survive a motion to dismiss under RCFC 12(b)(6). Under either approach, failure to establish subject matter jurisdiction because plaintiff did not meet 28 U.S.C. § 2513 jurisdictional requirements, or failure to state a claim under 28 U.S.C. § 1495 because plaintiff cannot produce the requisite certificate of innocence required under 28 U.S.C. § 2513 given the United States District Court for the District of Massachusetts' refusal to issue one based on the record, plaintiff's claim in this court must fail. Moreover, the United States Court of Federal Claims does not have jurisdiction to review other federal district court decisions. See Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court." (citing Allustiarte v. United States, 256 F.3d 1349, 1352 (Fed. Cir.), cert. denied, 534 U.S. 1042 (2001))); see also Straw v. United States, 4 F.4th 1358, 1361 (Fed. Cir. 2021) ("the Claims Court does not have jurisdiction to review the decisions of federal district courts").

Plaintiff also alleges "violation of my 4th admendment" as a source of this court's jurisdiction in his complaint. To the extent that plaintiff alleges illegal search and seizure of his property under the Fourth Amendment to the United States Constitution, this court does not have jurisdiction to hear those claims. See Mahoney v. United States, 129 Fed. Cl. 589, 592 (2016) ("To the extent that Mr. Mahoney's claim relies upon the First and Fourth Amendments, the court lacks subject matter jurisdiction."); see also Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) ("Because monetary damages are not available for a Fourth Amendment violation, the Court of Federal Claims does not have jurisdiction over a [sic] such a violation." (alteration added)); Polinski v. United States, 177 Fed. Cl. 782, 785 (2025); Taylor v. United States, 168 Fed. Cl. at 701 ("It is well established that the Fourth Amendment is not a money-mandating provision of the United States Constitution." (citing Brown v. United States, 105 F.3d at 623)); Whittington v. United

16

States, 166 Fed. Cl. 532, 542-43 (2023); Stephens v. United States, 165 Fed. Cl. 341, 348 (2023); Witchard v. United States, 165 Fed. Cl. at 136; Hastings v. United States, 165 Fed. Cl. 1, 6 (2023) ("The Federal Circuit has expressly held the Court of Federal Claims lacks jurisdiction over claims arising under the Fourth Amendment" (citing Brown v. United States, 105 F.3d at 623-24); Whiteford v. United States, 148 Fed. Cl. 111, 120 (2020); Roberson v. United States, 115 Fed. Cl. 234, 240 ("The Fourth Amendment is not money-mandating." (citing Brown v. United States, 105 F.3d at 623)), appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Haka v. United States, 107 Fed. Cl. 111, 113-14 (2012); Kam-Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) ("[T]his Court does not have jurisdiction to hear claims contesting the lawfulness of a search and seizure because due process and Fourth Amendment claims are reserved to the District Court." (alteration added) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995))), aff'd, 682 F.3d 1364 (Fed. Cir. 2012). Therefore, this court does not have jurisdiction to review plaintiff's allegations of illegal search and seizure under the Fourth Amendment to the United States Constitution.

Plaintiff also claims the Federal Tort Claims Act (FTCA) provides a basis for this court's jurisdiction for his claims. The Tucker Act, 28 U.S.C. § 1491(a)(1), as quoted above, specifically excludes tort claims from the jurisdiction of the United States Court of Federal Claims, and the cases which have addressed the issue also have uniformly found that this court does not have jurisdiction to adjudicate claims sounding in tort. See 28 U.S.C. § 1491(a)(1); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Allen v. United States, 88 F.4th 983, 986 (Fed. Cir. 2023); Rick's Mushroom Serv. Inc., v. United States, 521 F.3d at 1343 ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort."); Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d at 623 ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims." (alteration in original)); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Sanchez v. United States, 179 Fed. Cl. 688, 715 (2026) ("To the extent that plaintiff may be seeking to raise claims based on allegations of tortious conduct, . . . the Tucker Act specifically excludes tort claims from the jurisdiction of this court." (omission added) (citing 28 U.S.C. § 1491(a)(1))); Benavides v. United States, 180 Fed. Cl. 746, 749 (2026), aff'd, No. 2026-1533, 2026 WL 1084697 (Fed. Cir. Apr. 22, 2026) ("Under the Federal Tort Claims Act, tort claims against the United States are in the 'exclusive jurisdiction' of federal district courts." (citing 28 U.S.C. § 1346(b)(1))); Robinson v. United States, 170 Fed. Cl. 125, 130 (2024); Martin v. United States, 169 Fed. Cl. 342, 345 (2024) ("[I]t is well settled that this Court 'lacks jurisdiction to hear . . . FTCA claim[s] for allegedly tortious conduct by the United States or its agents because it is specifically barred from hearing tort cases.'" (first alteration added; second alteration and omission in original) (quoting Canuto v. United States, 615 F. App'x 951, 953 (Fed. Cir. 2015) (citing 28 U.S.C. § 1491(a)(1)))); Walker v. United States, 168 Fed. Cl. 171, 176 (2023); Rancho de Dias Alegres LLC v. United States, 168 Fed. Cl. 139, 144 (2023); Kinney v. United States, 161 Fed. Cl. 644, 649 (2022) ("this court is expressly prohibited from exercising jurisdiction over tort claims"); Schneiter v. United States, 159 Fed. Cl. 356, 367 (2022) ("[T]o the extent that plaintiff asserts a tort claim, that claim must be dismissed for lack of subject-matter jurisdiction."

17

(alteration added)); Turner v. United States, 160 Fed. Cl. 242, 245 (2022); Jackson v. United States, 162 Fed. Cl. at 291; Kant v. United States, 123 Fed. Cl. 614, 616 (2015) ("[Plaintiff's] claims for 'conversion' and 'fraud' sound in tort and this court lacks jurisdiction to hear tort claims." (alteration added) (citing 28 U.S.C. § 1491(a)(1)); Cox v. United States, 105 Fed. Cl. 213, 218 ("[P]laintiffs contend that the United States has engaged in tortious conduct, including harassment and persecution, malfeasance, fraud, abuse, and deception . . . . However, the Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort." (alteration and omission added)), appeal dismissed (Fed. Cir. 2012); Reid v. United States, 95 Fed. Cl. 243, 249 (2010) (dismissing plaintiff's invasion of privacy claims for lack of jurisdiction); Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims." (alteration added)) aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Mendes v. United States, 88 Fed. Cl. 759, 762 (2009) (finding plaintiff's claim for invasion of privacy is a tort claim over which this court lacks jurisdiction); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009). To the extent that plaintiff asserts claims under the FTCA, or otherwise sounding in tort, such claims are not within the jurisdiction of this court and must be dismissed.

Further, plaintiff tries to allege a "Civil Action for Deprivation of Rights" under 42 U.S.C. § 1983 when he states in his complaint "Section 1983" as a source of jurisdiction for this court and briefly references it in his response to defendant's motion to dismiss. Even if these assertions are construed generously to constitute a valid claim, however, this court does not have subject matter jurisdiction over actions arising under the Civil Rights Acts. See Pikulin v. United States, 97 Fed. Cl. 71, 77 ("Plaintiff also cites various provisions of the Civil Rights Acts, including § 1981, § 1983, § 1985, and § 1986, as bases for his claim. The court does not possess jurisdiction to entertain claims based on these statutes." (citing Marlin v. United States, 63 Fed. Cl. 475, 476, appeal dismissed, 140 F. App'x 256 (Fed. Cir. 2005), and Anderson v. United States, 22 Cl. Ct. 178, 179 n.2 (1990), aff'd, 937 F.2d 623 (Fed. Cir. 1991))), appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011); Barksdale v. United States, 174 Fed. Cl. 168, 174 (2024); Lopez v. United States, 178 Fed. Cl. 335, 337 (2025); Stanton El v. United States, 177 Fed. Cl. 197, 200 (2025); Schweitzer v. United States, 82 Fed. Cl. 592, 595 (2008) ("Likewise, this court does not have jurisdiction over the plaintiffs' civil rights claims brought under 42 U.S.C. §§ 1983, 1985 or 1986 (2000), because it is well-settled that jurisdiction over such claims lies exclusively in the district courts." (citing Stamps v. United States, 73 Fed. Cl. 603, 609-10 (2006) (citing Anderson v. United States, 22 Cl. Ct. at 179)); Salman v. United States, 69 Fed. Cl. 36, 39 n.3 (2005) ("Inasmuch as plaintiff's allegation might refer to the civil rights violations proscribed by 42 U.S.C. § 1983 (2000), this court has no jurisdiction over section 1983 claims." (citing Berdick v. United States, 222 Ct. Cl. 94, 612 F.2d 533, 536 (1979)); Marlin v. United States, 63 Fed. Cl. at 476 (stating that this "Court does not have jurisdiction to consider civil rights claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1985 because jurisdiction over claims arising under the Civil Rights Act resides exclusively in the district courts" (citations omitted)). In sum, any allegations arising under the Civil Rights Acts, including 42 U.S.C. § 1983, fail for lack of jurisdiction in this court and must be dismissed.

Additionally, plaintiff alleges that "money was siezed during incident also" and that he is due "REINBURESMENT OF MONEY AND PROPERTY TAKING IN THIS INCIDENT." Although plaintiff does not specifically assert a takings claims pursuant to the Fifth Amendment to the United States Constitution or include the elements of such a claim, defendant truing to anticipate such a claim in his complaint and asks the court to dismiss any Fifth Amendment Takings Claims for lack of jurisdiction. Defendant argues, "this Court lacks jurisdiction to entertain the takings claim alleged in the complaint because '[t]he weight of precedent strongly argues that the loss, depreciation[,] or damage of items confiscated in the context of a criminal investigation cannot be the basis of a takings claim in this [C]ourt.'" (alterations in defendant's motion to dismiss) (quoting Steward v. United States, 80 Fed. Cl. 540, 543 (2008) (citing Acadia Tech., Inc. v. United States, 458 F.3d at 1331)). The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. In order to assert a valid takings claim, plaintiff's claim must meet certain criteria to assert and then demonstrate a takings claim. To succeed under a Fifth Amendment Takings Clause claim, a plaintiff has the burden of proof to demonstrate that the government took a private property interest for public use without just compensation. See City of Fresno v. United States, 124 F.4th 876, 895 (Fed. Cir. 2024); St. Bernard Par. Gov't v. United States, 887 F.3d 1354, 1362 (Fed. Cir. 2018). To pursue a takings claim in the United States Court of Federal Claims, the plaintiff must "'concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act.'" Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1332 (Fed. Cir.) (quoting Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802 (Fed. Cir. 1993)), cert. denied, 567 U.S. 917 (2012). The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013); Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged taking. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); see also McCutchen v. United States, 14 F.4th 1355, 1364 (Fed. Cir. 2021) (quoting Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008)), cert. denied, 143 S. Ct. 422 (2022). In addition to "'having identified a valid property interest, the court must determine whether the government action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir.) reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005)). Plaintiff has not established a legitimate property interest, nor can plaintiff demonstrate that the government took the property interest for public use. See Fishermen's Finest, Inc. v. United States, 59 F.4th 1269, 1274-75 (Fed. Cir. 2023) (recognizing that "[c]ourts must evaluate two prongs in determining whether a government action constitutes a taking:" "'whether the claimant has identified a cognizable Fifth Amendment property interest'" and "'whether that property interest was "taken."'" (alteration added) (quoting Acceptance Ins. Cos. v. United States, 583 F.3d 849, 854 (Fed. Cir. 2009))). In failing to directly assert a takings claim or provide facts to support a takings

19

allegation, plaintiff has failed to demonstrate he meets the requirements to support a takings claim in this court.

Additionally, in plaintiff's response to defendant's motion to dismiss, plaintiff states "MORAN EXPRESSING AND IMPLIED IN FACT CONTRACT, WITH THE UNITED STATES" and lists certain elements of a breach of contract claim. The court notes, however, that "asserting claims for the first time in a response brief is no substitute for formally amending a complaint." Jarvis v. United States, 154 Fed. Cl. 712, 718–19 (2021), aff'd, No. 2022-1006, 2022 WL 1009728 (Fed. Cir. Apr. 5, 2022), cert. denied, 143 S. Ct. 394 (2022) (citations omitted); see also Casa de Cambio Comdiv S.A., de C.V. v. United States, 291 F.3d 1356, 1366 (Fed. Cir. 2002); United States v. Ford Motor Co., 463 F.3d 1267, 1276–77 (Fed. Cir. 2006)); see also Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002); MLB Transp., Inc. v. United States, 178 Fed. Cl. 385, 398 (2025) (citing Kalick v. United States, 109 Fed. Cl. 551, 561 n.10 (2013)). Moreover, "[p]laintiff has the burden to prove the existence of an implied-in-fact contract." Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (alteration added) (citing Pac. Gas & Elec. v. United States, 3 Cl. Ct. 329, 339 (1983), aff'd, 738 F.2d 452 (Fed. Cir. 1984)). In this respect, the required elements to demonstrate an express or implied contract are: "(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance," and (4) "[t]he government representative whose conduct is relied upon must have actual authority to bind the government in contract." City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998) (alteration added) (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230 (1991)); see also Columbus Reg'l Hosp. v. United States, 990 F.3d 1330, 1339 (Fed. Cir. 2021). Plaintiff, however, does not provide any factual information to support any allegation of any contract, including any implied in fact contract in this case. For example, plaintiff provides no allegations about mutuality of intent, consideration, or offer and acceptance by a government representative. Therefore, plaintiff's inability to provide factual allegations to allege an implied in fact contract demonstrates a failure to state a claim in this court. See also Calapristi v. United States, 156 Fed. Cl. 13, 17 (2021) ("An agreement will not be implied 'unless the meeting of minds was indicated by some intelligible conduct, act or sign.'") (quoting Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 598 (1923)).

Finally, plaintiff filed a motion to amend his complaint. Defendant responded that such a motion would be futile. Pursuant to RCFC 15(a), once twenty-one days after service of a responsive pleading has passed, as is true in plaintiff's case currently before the court, "a party may amend its pleading only with the opposing party's written consent or the court's leave." RCFC 15(a) (2025). Thereafter, the grant or denial of an opportunity to amend is within the discretion of the trial court. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Zenith Radio Corp. v. Hazeltine Rsch., Inc., 401 U.S. 321, 330 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."); Tamerlane, Ltd. v. United States, 550 F.3d 1135, 1147 (Fed. Cir. 2008) ("'The decision to grant or deny a motion for leave to amend . . . lies within the sound discretion of the trial court.'" (omission in original) (quoting Insituform Techs., Inc. v. Cat Contracting, Inc., 385 F.3d 1360, 1372 (Fed. Cir. 2004))); Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403 (Fed. Cir. 1989) ("It is well established that the

grant or denial of an opportunity to amend pleadings is within the discretion of the trial court.").

Although, generally, RCFC 15 "is liberally construed, and courts generally grant leave to amend if there is no 'apparent or declared reason' not to permit amendment," Sonoran Tech. & Pro. Servs., LLC v. United States, 133 Fed. Cl. 401, 403 (2017) (quoting A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1158 (Fed. Cir. 2014)), a request for leave to amend, however, should not be granted if to do so would be futile. In A & D Auto Sales, Inc. v. United States, the United States Court of Appeals for the Federal Circuit recognized that reasons to deny leave to amend to include, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." A & D Auto Sales, Inc. v. United States, 748 F.3d at 1158 (quoting Foman v. Davis, 371 U.S. at 182); see also Te-Moak Bands of W. Shoshone Indians v. United States, 948 F.2d 1258, 1260 (Fed. Cir. 1991); Zenith Radio Corp. v. Hazeltine Rsch., Inc., 401 U.S. at 330–31 ("[I]n deciding whether to permit such an amendment, the trial court was required to take into account any prejudice that Zenith [the nonmovant] would have suffered as a result.") (alterations added); Shell Oil Co. v. United States, 896 F.3d 1299, 1316 (Fed. Cir. 2018) ("'amendments are not allowed where they result in undue delay or prejudice'" (quoting Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1363 (Fed. Cir. 2013))); Sonoran Tech. & Pro. Servs., LLC v. United States, 133 Fed. Cl. at 403 ("The Court should deny leave to amend if there is evidence of delay, bad faith, repeated failure to correct a complaint's deficiencies, undue prejudice to the opposing party, or if the amendment would be futile."). Moreover, "'[t]he existence of any one of these criteria is sufficient to deny a motion to amend, the theory being that the amendment would not be necessary to serve the interests of justice under such circumstances.'" Christofferson v. United States, 77 Fed. Cl. 361, 363 (2007) (alteration added) (quoting Spalding & Son, Inc. v. United States, 22 Cl. Ct. 678, 680 (1991)).

"When futility is asserted as a basis for denying a proposed amendment, courts do not engage in an extensive analysis of the merits of the proposed amendments." St. Paul Fire & Marine Ins. Co. v. United States, 31 Fed. Cl. 151, 155 (1994); see also Wolfing v. United States, 163 Fed. Cl. 135, 149 (2022); Mason v. United States, 156 Fed. Cl. 614, 617 (2021). "Instead, courts simply decide whether a party's proposed amendment is facially meritless and frivolous, i.e., 'Where futility is proposed as a basis for denying amending a complaint, courts will discern whether a pleading is frivolous and insufficient on its face or has been adequately addressed in the prior complaint.'" St. Paul Fire & Marine Ins. Co. v. United States, 31 Fed. Cl. at 155 (emphasis in original) (quoting Alaska v. United States, 15 Cl. Ct. 276, 280 (1988)). "This court has found that granting leave to amend a pleading would be futile if the amended complaint would fail to state a claim upon which relief can be granted or if the proposed amendment would fail for lack of jurisdiction or is 'facially meritless and frivolous.'" Chapman v. United States, 130 Fed. Cl. 216, 219 (2017) (internal citations omitted) (quoting Smith v. United States, 120 Fed. Cl. 455, 458 (2015)); see also Diaz v. United States, 141 Fed. Cl. 161, 166 (2018) ("Additionally, '[a] claim that is barred by the statute of limitations would be futile.'"

(alteration in original) (quoting Chapman v. United States, 130 Fed. Cl. at 219)); Godfrey v. United States, 131 Fed. Cl. 111, 123 (2017); Marchena v. United States, 128 Fed. Cl. 326, 330 (2016) ("A proposed amendment is futile if it would not survive a motion to dismiss."), aff'd, 702 F. App'x 988 (Fed. Cir. 2017); Meyer Grp., Ltd. v. United States, 115 Fed. Cl. 645, 650 (2014) ("A counterclaim must contain facts sufficient to state a claim to relief that is plausible on its face to survive a motion to dismiss under Rule 12(b)(6)." (internal quotations omitted)); Shoshone Indian Tribe of the Wind River Rsrv., Wyo. v. United States, 71 Fed. Cl. 172, 176 (2006) ("A motion to amend may be deemed futile if a claim added by the amendment would not withstand a motion to dismiss."). As the United States Court of Appeals for the Federal Circuit has held:

> When a party faces the possibility of being denied leave to amend on the ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion.

Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d 1339, 1354–55 (Fed. Cir. 2006); see also Taino Constr. Grp., LLC v. United States, 177 Fed. Cl. 730, 749 (2025); Dixon v. United States, 158 Fed. Cl. 80, 85 (2022) (citing Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d at 1354–55).

As discussed above, plaintiff failed to provide additional factual information or legal arguments with his motion to amend his complaint. Rather, he simply stated, "1. WRONGFUL CONVICTION AND IMPRISONMENT," "2. DAMAGES DUE TO UNJUST CONVICTION AND IMPRISONMENT," and "3. INVASION OF PRIVACY." Plaintiff, however, did not develop his allegations, or even offer a basis to amend his newly advanced invasion of privacy claim, which sounds in tort, and over which this court lacks jurisdiction. See Mendes v. United States, 88 Fed. Cl. at 762 (finding plaintiff's claim for invasion of privacy is a tort claim over which this court lacks jurisdiction). Moreover, plaintiff still has not been able to provide a copy of a certificate of innocence from the United States District Court for the District of Massachusetts with his motion to amend his complaint. Rather, plaintiff repeated that he "FILED A MOTION TO THE DISTRICT COURT TO RECIEVE A CERTIFICATE OF INNOCENCE BUT STILL HASNT RECIEVED ANYTHING IN RESPONCE," reiterated that "A CERTIFICATE OF INNOCENCE IS NOT AN ELEMENT OF A PRIMA FACIE OF UNJUST CONVICTION AND IMPRISONMENT," and represented that the First Circuit's opinion reversing his conviction "CONTAINS THE NECESSARY RECITALS OF 28 U.S.C. 2513."

The court finds no basis to allow an amendment to plaintiff's complaint. As discussed above, the United States District Court for the District of Massachusetts specifically denied plaintiff's motion to receive a certificate of innocence on April 27, 2026, recognizing that "Moran has not met his burden to show that '[h]e did not commit any of the acts charged'" and "has made no showing that 'he did not by misconduct or neglect cause or bring about his own prosecution.'" United States v. Moran, No. CR 16-10184-IT, at 3 (D. Mass. Apr. 27, 2026) (alteration in original) (quoting 28 U.S.C. § 2513(a)(2)).

Moreover, as described above, the reversal of plaintiff's conviction by the United States Court of Appeals for the First Circuit, the United States District Court for the District of Massachusetts' order granting plaintiff's motion to suppress, and the government's dismissal of plaintiff's criminal case do not suffice to meet the elements of 28 U.S.C. § 2513. Plaintiff has not been able to establish that plaintiff did not commit any of the acts charged, that plaintiff's actions in connection with such charge constituted no offense against the United States, nor that plaintiff did not bring about his own prosecution by neglect or misconduct. Rather, the United States District Court for the District of Massachusetts explicitly determined that the First Circuit "did not find Moran 'not guilty' of the offenses of conviction" when it reversed the denial of the motion to suppress based on an unconstitutional search. United States v. Moran, No. CR 16-10184-IT, at 2 (D. Mass. Apr. 27, 2026). Accordingly, the court lacks jurisdiction over plaintiff's claims under 28 U.S.C. § 2513 and 28 U.S.C. § 1495. The court concludes that given the lack of jurisdiction and plaintiff's failure to provide other viable claims providing jurisdiction in this court, further litigation would be futile and would not be a reasonable use of plaintiff's, defendant's, or the court's time and effort. Plaintiff has not offered any indication which would support that an amended pleading could survive a further dispositive motion to dismiss. See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V., 464 F.3d at 1354-55; Marchena v. United States, 128 Fed. Cl. at 330. Therefore, the court determines that plaintiff's request to amend his complaint would be futile and is denied.

## C O N C L U S I O N

For the foregoing reasons, none of the claims raised by the plaintiff are within the jurisdiction of this court. Defendant's motion to dismiss plaintiff's complaint is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk's Office shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**

23